BONSACK MACH. CO. v. HULSE et al.

(Circuit Court, W. D. Virginia. July 26, 1893.)

1. CONTRACTS—EMPLOYMENT—RIGHT TO EMPLOYE'S INVENTION—SPECIFIC PERFORMANCE.

By a contract to set up and operate cigarette machines, one of the defendants agreed that any improvement made by him in the machines should be for complainant's benefit, and, subsequently reporting an improvement, he was furnished with facilities for experimenting, and assured by complainant that it would pay him liberally if the improvement was practicable. Thereafter defendant assigned a half interest to the other defendant, a coemploye, when both denied plaintiff's interest, and asserted their intention of selling to others. *Held,* that such improvement was the property of plaintiff, and that defendants should be directed to convey to it their interest therein.

2. SAME—COMPENSATION FOR WORK OUTSIDE THE CONTRACT—REFERENCE.

The defendant was entitled to compensation for perfecting such improvement after leaving plaintiff's employ, and, in the absence of proof as to what would be an adequate amount, there should be a reference to a master to ascertain.

In Equity. Bill by the Bonsack Machine Company against W. A. Hulse and R. H. Wright for specific performance. Decree for complainant.

S. A. Duncan and A. H. Burroughs, for complainant.
F. H. Busbee, for defendants.

GOFF, Circuit Judge. This suit is for the purpose of enforcing the provisions of a contract made July 19, 1886, by the Bonsack Machine Company and W. A. Hulse. The complainant, a company organized under the laws of the state of Virginia, has for its business the constructing, operating on royalties, leasing, and selling of machines for the manufacture of cigarettes. The contract alluded to is as follows:

"This agreement made this 19th day of July, 1886, between the Bonsack Machine Company, of the first, and W. A. Hulse, of the second, part, witnesseth: That the said company has this day employed the said Hulse to set up and operate its cigarette machines at a salary of $50 for the first month and $65 per month thereafter, with such advance of salary, up to not exceeding $75 per month, as the services of the said Hulse may justify. It is agreed that the said Hulse will serve the company wherever desired; the company to pay his railroad fares whenever traveling at the request of the company. No abatement will be made for loss of time because machines are not kept running, nor any extra payment for extra hours. The said Hulse agrees to do all in his power to promote the interests of the said company, and, in case he can make any improvement in cigarette machines, whether the same be made while in the employment of the said company or at any time thereafter, the same shall be for the exclusive use of the said company. And it is agreed that in case the said Hulse be not able to serve the said company

efficiently, or shall in any way neglect his duty, the company may stop his services at any time, paying up to such time; but, in case the said Hulse desires to quit the said company, he shall give sixty days' notice thereof.

"Bonsack Machine Company.

"By D. B. Strouse, President.

"W. A. Hulse."

It is claimed by complainant that Hulse, while operating a machine under said contract, made an improvement on the Bonsack machine, consisting of a device, which may be attached to the machine, by which the lap on the cigarette is changed from a pasted to a crimped lap. The plaintiff claims that Hulse duly reported his improvement to it, and that the Bonsack Company provided Hulse with a machine to experiment with, a private room to work in, and material to use in testing his device, assuring him, at the same time, that, if his improvement should prove practicable and valuable, the Bonsack Company would pay him liberally for his work; also, that Hulse, so using the machine, room, material, and labor employed to assist him, spent several months in perfecting such device, all at the cost of the complainant; that it is believed it will prove a practicable working arrangement, of more or less value, but the same has not yet been fully demonstrated; that complainant is, under said contract, entitled to the device, and to a conveyance of the same, and of the patents applied for relative to the said improvement; but that Hulse refuses to convey the same, and claims that he has sold an interest therein to the defendant Wright, and that they demand a large sum of money for the improvement, and are endeavoring to sell the same to others. Complainant says that R. H. Wright, the defendant, was, and still is, an agent and representative of the Bonsack Machine Company in introducing the use of its cigarette machines in certain "foreign lands," under a contract dated December 22, 1888, and that Hulse was with Wright, working the cigarette machines, and in the service of the Bonsack Company, by virtue of his employment with Wright, when the improvement was discovered; that Wright was aware of the contract of Hulse with the company when he purchased his one-half interest in the device. All these allegations of the bill are either admitted in the answer of the defendants, or, in my judgment, proven by the testimony and exhibits filed in the case.

Should the contract of July 19, 1886, between the Bonsack Machine Company and W. A. Hulse be enforced? It is claimed by defendants that it should not be, that it is void because of fraud in its procurement, because of inadequacy of consideration, and for that it is in contravention of public policy.

The charge of fraud is not sustained. The statement in the answer of the defendants, which is sworn to, that the contract was not read to or by Hulse, and not understood by him when he signed it, is shown by the testimony of several witnesses, Hulse himself being one, not to be true. The evidence is full and complete that Hulse understood the character of the instrument he signed, and that he executed it believing it to be reasonable and

just.  I do not find that the contract was harsh and unreasonable when entered into.  There is nothing in the case that shows— no evidence that discloses—that the contract was not a wise and advantageous one for both parties to it.  I find that good reasons existed for both Hulse and the Bonsack Machine Company to execute such a contract.  The one secured steady, lucrative, and most desirable employment, to continue as long as his own conduct justified it, with opportunities to greatly benefit his condition; while the other obtained a capable employe, and protected its business with such restrictions as its experience in the matter in which it was engaged had demonstrated to be necessary.  Subsequent developments have fully justified the course taken, and the motive that actuated the parties in making said contract.

Finding as I do on this point, I, in effect, at the same time dispose of the objection of inadequacy of consideration, as also of the suggestion that a court of equity will withhold its decree, and not direct the enforcement of such contracts,—those that are harsh, unconscionable, and unreasonable.  If I found the contract to be of that character, I would most assuredly withhold the decree of specific performance.  But, after a careful consideration of the circumstances surrounding this case, as presented by the pleadings, depositions, and exhibits, I conclude that the contract should be enforced.  Public policy requires that men of lawful age and proper understanding be permitted to make agreements and execute contracts concerning their business matters, and that when they are so made and executed they shall be binding upon and held sacred by those entering into them, and be enforceable in courts of justice.  Even if occurrences subsequent to the execution of the contract prove that one of the parties thereto was improvident when he signed it, still it does not follow that equity will grant him relief, and set aside his agreement.  Public policy is paramount, and prohibits the interference (unless for special and grave reasons) with the freedom of contract.  This contract is not void because in restraint of trade, is not one in which the public is so interested as to justify a court of equity in restraining its execution.  The cases are many where contracts to a certain extent in restraint of trade have been sustained by the courts. If the contract does not tend to injure the general public, and its object is a lawful one, it will be upheld, because the same general public is directly and deeply concerned in the individual freedom of those composing it, in making contracts relative to those matters in which they alone are interested.  The question here is, shall Hulse or the Bonsack Machine Company have the use and benefit of the improvement made by Hulse in connection with cigarette machines?  The public, in so far as questions relating to public policy are concerned, has no interest in this matter.  Should the claim of the Bonsack Machine Company fail, the public would have no right to use the improvement.  The device would then belong to Hulse, would be his secret, protected by patent, and guarded from public use by provisions of law.  The restraint provided for

in the contract does not interfere with any interest of the public, and it only gives a fair protection to the party in whose favor it is given, for which proper compensation was stipulated for the party making it. The parties were competent to contract, and it was proper for Hulse to sell an improvement or invention not then made. Such contracts are not unusual. Hulse does not sell his labor for all time, nor does he contract to sell all improvements he may thereafter make, but only such as relate to cigarette machines. To hold that he had not the right to so contract would deprive him of a privilege that might be of great value to him, and the effect of such a rule would be to discourage improvements and prevent inventions.

I will now consider the testimony relating to matters transpiring after the execution of the contract and after the making of the improvements by Hulse. I do not think the claim set up by the defendants that Hulse was not in the employ of the Bonsack Machine Company when the improvement was made is material, and, if it should be, it cannot be sustained by the evidence. From the date of the contract, July 19, 1886, to December, 1889, Hulse was unquestionably employed by that company; his occasional absence being either at his request or with his assent.

I do not deem it necessary, in disposing of the matter now before me, to set forth in detail the arrangements existing between the Bonsack Machine Company and the defendant Wright, called in this controversy "Bonsack Oriental Affairs." A careful examination of the entire matter leads me to the conclusion that Hulse, so far as the questions involved in this suit are concerned, was in the service of the Bonsack Machine Company when he was on the rolls of, and being paid by, "Bonsack Oriental Affairs." This was from December, 1889, to August, 1891. The evidence shows that the improvement "took practicable shape" in Hulse's mind while he was in foreign lands working with "Bonsack Oriental Affairs," and that he then and there made a model of it. Soon after Hulse returned to the United States he assigned to the defendant Wright a one-half interest in the improvement he had made, by contract dated August 21, 1891, and he also advised the Bonsack Machine Company of the fact that he had made the invention, and explained to the officers of the same the character of the device. An arrangement was made between them for experimenting with and perfecting the same, Hulse giving the matter his personal attention, and the company furnishing a machine, room, labor, and material. This was done, I find from the evidence, with the mutual understanding that the device, when successfully tested and complete, should be the property of the Bonsack Machine Company, and that Hulse should be paid by that company liberally for his work. Defendant Wright was aware of the contract of July 19, 1886, between Hulse and the Bonsack Machine Company when he purchased an interest in said improvement, and he was also aware of the claim made by that company of ownership of the same, and of the fact that Hulse was experimenting in connec-

tion with it, using the machine, materials, and labor of the company for that purpose. It seems that, pending the experiments and work I have alluded to, some question arose between the parties as to the ownership of the improvement, and certain correspondence was had between Hulse and Wright, on the one part, and the company, on the other. Negotiations having in view an adjustment of the controversy were carried on, and, after several propositions had been made and rejected, the matter rested on a communication from Wright to the secretary of the company, dated March 21, 1892, in which the following language is found: "I wish it distinctly understood that we will push forward the crimping device as fast as possible, under the assurance of your board as to your liberality in the matter if we make a success of it." Within a month after this, and when the testing of the device was still going on, the defendants deny plaintiff's interest in the improvement, and assert their intention of selling it to others. This suit is then instituted.

I think the contract between the Bonsack Machine Company and Hulse should be enforced, and that a court of equity should so decree. Adequate compensation could not be obtained at law in a matter of this character. It would be impossible, from the nature of the case, to ascertain the damages the company might sustain by being deprived of the invention for which it had contracted, and the benefits of which it was entitled to. This is peculiarly the kind of contract that equity will enforce, and not compel the party asking performance to rely on the remedy at law. Let there be a decree for the specific performance of the contract of July 19, 1886, in so far as it relates to improvements on cigarette machines, and let it provide that the improvement made by Hulse, referred to in the proceedings of this cause, is and shall be the property of the Bonsack Machine Company, and let Hulse and Wright be directed to convey the same, and all interest they, and each of them, may have in the same, to said company. While the contract gives the Bonsack Machine Company the exclusive use of any improvements in cigarette machines that Hulse may make, it does not authorize that company to appropriate such improvements, if the same were made or perfected while he was not in the employ of the company, and under its pay, without making to him a reasonable and just compensation for the same. The improvement now in controversy has been worked upon and perfected by Hulse since he left the service of the company, and as to his compensation he and the company have been unable to agree, and I do not find sufficient testimony in the record bearing on this point to enable me to reach a satisfactory conclusion relative thereto; hence this case must be referred to a master, to ascertain and report whether or not the Bonsack Machine Company has paid Hulse for his actual services rendered for said company in connection with said improvement, under the contract between them; if not, what amount is still due him. Let the master also report as to the condition of said improvement, as to its efficacy for the

purposes for which it is intended. He will also report if letters patent have been issued covering the same, and, if so, to whom, when, and by what authority; if not, the condition of the applications made by Hulse for patents. Let him also report what sum, in his opinion, under the facts of the case, the evidence now in, and to be taken by him, and in the light of this opinion, will be liberal compensation to Hulse and Wright for their services and expenses in connection with the perfecting of said device, and securing patents for the same. Let the injunction heretofore issued be perpetuated.